Katherine JEFFERSON, Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY, a foreign corporation, et al., Defendants.

No. 91–551–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

April 20, 1993.

Mark H. Perenich, Perenich, Carroll, Perenich, Avril & Caulfield, P.Aa., Clearwater, FL, for plaintiff.

Joseph W. Clark, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' motion for summary judgment filed on November 2, 1992 pursuant to Fed.R.Civ.P. 56(b).

Fed.R.Civ.P. 56(f) states that "when a motion for summary judgement is made ... [the] adverse party must [respond by setting] forth specific facts showing that there is a genuine issue for trial." This rule mandates

the entry of summary judgment "where [the adverse] party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## Facts:

This case involves a group life and accidental death and dismemberment insurance policy (Policy # GL 13,659) issued by Reliance Standard Life Insurance Company ("Reliance") to the group policyholder, Metal Industries, Inc. ("Metal Industries"). The policy is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18, as amended by the Consolidated Omnibus Budget Recovery Act ("COBRA"), 29 U.S.C. sections 1161–68. Ronald Jefferson, deceased spouse of Plaintiff Katherine Jefferson, was employed by Defendant, Metal Industries. Mr. Jefferson's employment terminated on January 20, 1989. During Mr. Jefferson's employment, he was covered under Metal Industries' group policy, the policy at issue in this case. On February 11, 1989, Ronald Jefferson was hospitalized at Edward White Hospital.

Subsequent to his termination of employment, Mr. Jefferson was provided with a Health Benefits Continuation Plan Enrollment Form. Plaintiff, Katherine Jefferson, elected to continue health benefit coverage on behalf of the decedent on February 23, 1989. Reliance does not dispute the continuation of decedent's medical insurance and has paid decedent's medical expenses incurred as a result of his hospitalization. Ronald Jefferson died on March 17, 1989, and in June of 1989, Plaintiff filed a claim with Reliance for life insurance benefits. Reliance denied Plaintiff's claim.

## Issues:

1. Whether Defendant Metal Industries failed to notify Reliance of the decedent's termination of employment as required under 29 U.S.C. section 1166(a)(2), and that as a result of that failure, that decedent and Plaintiff were not offered insurance continuation as required by ERISA and COBRA.

2. Whether Defendant Reliance failed to notify decedent and Plaintiff of their right to benefit continuation as required by 29 U.S.C. section 1166(a)(1), and that as a result, decedent and Plaintiff were not offered insurance continuation as required by ERISA and COBRA.

3. Whether life insurance benefits are due under the provisions of the policy at issue.

## Requirement of Notice and Continuation of Coverage

COBRA requires the sponsor of a *"group health plan* [to] provide ... [that] each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event ... [may] elect, within the election period, continuation coverage under the plan." 29 U.S.C. section 1161(a) (emphasis added). The purpose of this section is to prevent individuals covered under their employer's ERISA plan from having no group health coverage at all from the time a qualifying event terminates their coverage to the time in which they are able to secure some other coverage. *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.,* 929 F.2d 1558, 1569 (11th Cir.1991).

■ COBRA defines "group health plan" as "an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. section 1167(1). As defined in section 213(d):

" 'medical care' means amounts paid—

(A) *for the diagnosis, cure, mitigation, treatment or Prevention of disease, or for the purpose of affecting any structure or function of the body,*

(B) *for transportation primarily for and essential to medical care referred to in subparagraph (A),* or

(C) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical care referred to in subparagraphs (A) and (B)."

*Id.* The definition of medical care does not include or reference life or accidental death and dismemberment benefits. Therefore a "group health plan" under the provisions of

ERISA and COBRA does not contemplate life or accidental death and dismemberment. Thus a plan sponsor is not required under ERISA and COBRA to offer continuation of coverage for life or accidental death and dismemberment benefits.

COBRA also requires that an employer of an employee covered under a group health plan to give notice to the plan administrator of a qualifying event which terminates an employee's coverage under the plan. 29 U.S.C. sections 1166(a)(2), 1166(a)(3). In addition, where the administrator has been notified by the employer of such a qualifying event, the administrator in return must notify the employee of his right of continuation coverage under the plan. 29 U.S.C. section 1166(a)(4). As discussed earlier, the provisions of COBRA and ERISA do not contemplate continuation of life or accidental death and dismemberment benefits, but rather require the plan administrator to provide continuation coverage of a *group health plan* which provides medical care. Therefore the section 1166 notice requirements do not apply to conversion rights or continuation coverage of accidental death and dismemberment benefits. *See Howard v. Gleason Corporation,* 901 F.2d 1154, 1161 (2d Cir.1990) (ERISA does not require notice of necessity to exercise a conversion right to continue life insurance coverage after termination of employment).

█ Defendants have attached the affidavit of John Hager to their memorandum in support of their motion to dismiss. Mr. Hager states that the decedent, Ronald Jefferson was provided with a health benefits continuation plan enrollment form, and that on February 23, 1989, Mrs. Jefferson made the election to continue Mr. Jefferson's medical insurance. In addition, Defendants have attached a copy of the health benefits continuation plan enrollment form signed by Mrs. Jefferson. Defendants agree that Mr. Jefferson is entitled to payment of his medical expenses as a result of his hospitalization, and additionally claim to have paid these expenses. These facts are not disputed by the Plaintiff and demonstrate Defendants' compliance with the provisions of ERISA and COBRA. Although Defendants have not offered evidence that Metal Industries notified Reliance of Mr. Jefferson's termination of employment, the above facts demonstrate that any failure to do so did not result in the failure of Reliance to notify the Plaintiff and decedent of their right to continue medical insurance or to continue that coverage upon Plaintiff's election to do so. Since Defendants have offered evidence which demonstrates their compliance with the provisions of ERISA and COBRA, and Plaintiff has offered no evidence in dispute of this compliance, the Court grants Defendant's motion for summary judgment as to Counts III and IV of the complaint.

### Benefits Due Under the Reliance Policy

The Reliance policy provides that persons eligible under the policy are "all active, [f]ull-time employees." Policy # GL 13,659, p. 1. The parties do not dispute that Ronald Jefferson was a full-time employee of Metal Industries from March 16, 1987 through January 20, 1989 and was covered during that time under Metal Industries' group policy. The policy additionally provides that the insured's coverage terminates on the date he ceases to be eligible for coverage. Policy # GL 13,659, p. 4. The parties do not dispute that Ronald Jefferson terminated his employment with Metal Industries on January 20, 1989. Therefore, Ronald Jefferson ceased to be an "insured" under the Reliance policy on January 20, 1989, and no life or accidental death and disability benefits were due to Plaintiff upon Ronald Jefferson's death under the policy.

The policy additionally provides a thirty-one day conversion privilege which requires the insured to make a written application within thirty-one days after he terminates his employment in order to convert his group coverage into an individual life insurance policy. Policy # GL 13,659, p. 5. In addition, the first premium must be paid at the time of application. *Id.* In his affidavit, John Hager states that neither Mr. or Mrs. Jefferson submitted an application for the issuance of individual life insurance pursuant to the conversion privilege contained in the policy. In addition Mr. Hager states that neither Mr. or Mrs. Jefferson ever paid a premium for life insurance or accidental death and dismemberment insurance. Plaintiff does not

dispute this evidence. Therefore the Court must assume that Plaintiff failed to comply with the conversion provision under the policy, and thus lost his conversion right.

 However, Plaintiff cites *Branch v. G. Bernd Co.*, 955 F.2d 1574 (11th Cir.1992) (holding that the incapacity of a former employee during the sixty day election period for continued health coverage under COBRA, tolled that period until an administrator could be appointed to make the election for him), and claims that since Mr. Jefferson became incompetent during the conversion period, the period was tolled, and that Mrs. Jefferson subsequently acted within a reasonable time to convert the Reliance life insurance policy.

The *Branch* court noted that COBRA does not address tolling, but found guidance in decisions which permitted the application of equitable tolling principles to federal statutes of limitation, so long as this application was consistent with legislative intent. *Id.* at 1580 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The court found that the intent of Congress in enacting COBRA was to provide beneficiaries who would otherwise lose health care coverage, the opportunity to continue that coverage for a specified period. *Id.* at 1580–81. In enacting COBRA, Congress assured beneficiaries of at least sixty days in which to elect continued coverage. *Id.* at 1581 (citing 29 U.S.C. section 1165(1)). The court found that since a beneficiary who became incompetent during that election period did not get the full benefit of the election period, that equitable tolling principles would further Congress' intent to provide continued access to health insurance for at least sixty days. *Id.* The court found that tolling principles should apply where a beneficiary becomes incapacitated during the election period and a representative who can make the election for him is not appointed until after the election period has expired. *Id.* at 1581.

Although the life insurance conversion period under the Reliance policy does not involve a COBRA mandated election period, principles of equity similar to those in *Branch* may provide for the tolling of the conversion period in this case if Ronald Jefferson became incompetent during the thirty-one days following the termination of his employment. Plaintiff has attached to her memorandum of law, a copy of Ronald Jefferson's consultation report, dated February 14, 1989. The report suggests that Mr. Jefferson was not competent at that time and thus unable to elect to convert his group life insurance into an individual life insurance policy. Since Plaintiff has presented evidence of Mr. Jefferson's incompetence during the conversion period there is a genuine issue of material fact which precludes summary judgment. Therefore Defendants' motion for summary judgment as to Count I of the complaint is denied. Accordingly, it is

**ORDERED** that Defendants' motion for summary judgment be **granted** as to Counts III and IV of the complaint and **denied** as to Count I of the Complaint.

**DONE AND ORDERED.**