Kaplan v. Volvo Cars of North America CV-96-106-JD  11/19/96
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE

Alan D. Kaplan, et al.

        v.                              Civil No. 96-20-JD

Volvo Cars of North
America, Inc., et al.


                            O R D E R


     The plaintiffs, Alan D. and Emilie L. Kaplan, filed this

action against the defendants, Volvo Cars of North America Inc.,

Volvo Car Corporation, AB Volvo, and Volvo of America, Inc.,

seeking damages stemming from the deployment of an air bag in one

of Volvo's vehicles.  Before the court is the motion to dismiss

of Volvo Car Corp. ("VCC") and AB Volvo ("AB") for failure to

effect service of process on VCC and AB in accordance with the

Hague Service Convention (document no. 10).


                           Background

     On January 14, 1993, Alan D. Kaplan was involved in a

collision involving his 1988 Volvo 765 Turbo Station Wagon in

Manchester, New Hampshire.  As a result of the collision, the

driver's-side air bag inflated.  The plaintiff sustained

permanent injuries to his left wrist and left shoulder that have

disabled him from his profession as an invasive cardiologist.

     On January 12, 1996, the plaintiffs filed suit against the

defendants in Hillsborough County Superior Court, alleging strict liability, negligence, breach of express and implied warranties, and Emilie's loss of consortium. Pursuant to N.H. Rev. Stat. Ann. ("RSA") § 510:4(II), the plaintiffs served process on defendants VCC and AB, both Swedish corporations, by sending a copy of the process to the New Hampshire Secretary of State and by sending via registered mail, return receipt requested, copies of the process to the defendants' corporate headquarters. Affidavits to this effect and copies of the returned receipts, dated February 8, 1996, have been filed with the court.

In addition, on January 12, 1996, the plaintiffs also filed an identical suit, involving the same plaintiffs, the same defendants, and the same causes of action, in the United States District Court for the District of New Hampshire, basing jurisdiction on diversity of citizenship. On February 23, 1996, defendant Volvo Cars of North America, filed a notice of removal of the state case under 28 U.S.C. §§ 1441(b), and 1446(a). On March 7, 1996, the court issued an order consolidating the case originally filed in federal court with the case removed from state court and assigned the consolidated case docket number 96-020-JD, the number assigned to the case originally filed in federal court. The court further stated that "[t]he merger of these cases shall not prejudice the procedural or substantive

rights of any party which existed prior to the merger."  By order of consolidation dated July 10, 1996, the court transferred the instant motion to dismiss, which had been filed in the case originally filed in state court, to the consolidated case.

## Discussion

Defendants VCC and AB in their motion to dismiss under Fed. R. Civ. P. 12(b)(5) claim that the service of process was insufficient[1] because they can be served only in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention" or "Convention"), reprinted in 28 U.S.C.A. Rules at 210 (West 1992), and the plaintiffs have not complied with the Convention's requirements.  In response, the plaintiffs contend that service by registered mail pursuant to RSA § 510:4(II) prior to removal is consistent with the Hague Convention.  In light of the fact that the defendants were served in accordance with state law prior to removal, the court must consider whether such service is consistent with the Hague Convention.  See Borschow Hosp. & Medical Supplies, Inc. v. Burdick-Siemens Corp., 143

---

[1]Although VCC and AB have filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2),(4),(5), the motion is properly before the court as a motion for insufficiency of service of process under Rule 12(b)(5).

3

F.R.D. 472, 477 (D.P.R. 1992) ("[S]tate and federal methods of service on foreign defendants inconsistent with the Hague Convention are preempted by the Supremacy Clause of the Constitution.").

"The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. . . . [It] was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988). Both the United States and Sweden are signatories to the Convention.

Article 1 of the Convention provides:

> The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.

See also Volkswagenwerk Aktiengesellschaft, 486 U.S. at 700 ("If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies."). Because RSA § 510:4(II) requires that judicial documents served on nonresident defendants be transmitted by registered mail to the

4

defendants' place of business, here the defendants' headquarters in Sweden, the statutory requirements must be consistent with the methods of service under the Hague Convention.

Article 2 of the Hague Convention expressly contemplates service through a Central Authority:

> Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting states, and to proceed in conformity with the provisions of articles 3 to 6.

Although the Convention favors service through the Central Authority, Borschow Hospital, 143 F.R.D. at 478, the Convention also recognizes other means of service. Article 8 authorizes service through diplomatic or consular agents, Article 9 authorizes the use of consular channels to forward documents to the authorities of contracting states who are designated to effect service, and Articles 11 and 19 affirm bilateral alternate agreements and the alternate means permitted by the internal laws of contracting states.

In addition, Article 10 provides:

> Provided the State of destination does not object, the present Convention shall not interfere with --
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through

the judicial officers, officials, or other competent
persons of the State of destination[,]

     (c) the freedom of any person interested in a
judicial proceeding to effect service of judicial
documents directly through the judicial officers,
officials, or other competent persons of the State of
destination.

Although Sweden has objected to Articles 10(b) and 10(c), it has
not objected to Article 10(a). Therefore, by implication, Sweden
will accept service of process effectuated pursuant to Article
10(a).

Much discussion has been generated by the fact that Article
10(a) uses the verb "send" rather than the verb "serve," which
appears in the other sections of Article 10. See, e.g., Bankston
v. Toyota Motor Corp., 889 F.2d 172, 173-74 (8th Cir. 1989);
Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986); Golub v.
Isuzu Motors, 924 F. Supp. 324, 327-28 (D. Mass. 1996); Borschow
Hospital, 143 F.R.D. at 478-80. Indeed, Article 10(a) is the
only part of the treaty in which the drafters used the word
"send" instead of "serve" to refer to the transmittal of
documents to a foreign country. See Borschow Hospital, 143
F.R.D. at 478. Relying on the treaty's use of the term "send,"
some courts have held that Article 10(a) only authorizes the
post-service transmittal of litigation-related documents through
the mail, and not the initial act of placing a defendant on

6

notice of a lawsuit. See, e.g., Bankston, 889 F.2d at 172; Golub, 924 F. Supp. at 328; Wasden v. Yamaha Motor Co., 131 F.R.D. 206, 209 (M.D. Fla. 1990). A second line of authority has concluded that Article 10(a) permits service of process by postal channels. See, e.g., Ackermann, 788 F.2d at 838-40; Borschow Hospital, 143 F.R.D. at 480. The First Circuit has not addressed the issue.

The court is persuaded by the second line of authority. Such a reading comports with the underlying purpose of the Convention, i.e., to facilitate service of process. Id. at 479; see Schlunk, 486 U.S. at 698. Indeed, given the Convention's purpose, the reference in Article 10(a) to the "freedom to send judicial documents, by postal channels, directly to persons abroad" would be superfluous if the provision were not interpreted to authorize service of process by mail. Shoei Kako Co., Ltd. v. Superior Court, 109 Cal. Rptr. 402, 411 (Ct. App. 1973); see also Ackermann, 788 F.2d at 839; Smith v. Dainichi Kinzoku Kogyo Co., 680 F.Supp. 847, 850 (W.D. Tex. 1988). The court also notes that Sweden has declined to declare an objection to Article 10(a) despite the number of courts which have held holding that the provision authorizes service by mail. See Borschow Hospital, 143 F.R.D. at 480; Patty v. Toyota Motor Corp., 777 F. Supp. 956, 958 n.3 (N.D. Ga. 1991).

Accordingly, the court finds that service of process in

7

accordance with RSA § 510:4(II) is consistent with the Hague Convention. The motion to dismiss of defendants AB and VCC under Rule 12(b)(5) is denied.


## Conclusion

The motion to dismiss of Volvo Car Corporation and AB Volvo (document no. 10) is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

November 19, 1996

cc:  David W. Hess, Esquire
     John C. LaLiberte, Esquire

8